THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STAN-LEY HUGHES, Defendant-Appellant.

First District (1st Division)   No. 1—92—3571

Opinion filed June 30, 1995.—Rehearing denied August 29, 1995.

Thomas Peters, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Golden, and Michael Cho, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

As the July 6, 1992, trial date in this murder case approached, the State realized it had lost track of two of its witnesses.

The statutory time for bringing the defendant to trial was running out. Thirteen days remained. On July 6, and again on July 27, the State asked for and received extensions of the speedy trial term. The trial began on September 2, 1992.

The defendant was charged with six counts of murder and eight counts of aggravated kidnapping. The jury found him guilty of one count of murder and three counts of aggravated kidnapping. He was sentenced to natural life imprisonment for the murder and, consecutive to that sentence, to three concurrent 60-year sentences for the kidnappings.

The defendant contends he should be discharged because his statutory right to a speedy trial was violated. We do not agree with that and the other contentions made by the defendant. We affirm his murder and kidnapping convictions and sentence.

EVIDENCE AT TRIAL

The defendant does not claim on appeal that the evidence fails to support the guilty verdicts. Therefore, we will summarize the evidence without unnecessary detail.

At about 9 p.m. on November 8, 1989, Diane Johnson (Diane) drove to the garage in the alleyway behind her home at 8222 S. Marshfield in Chicago. Her nephew, Leonard Johnson (Leonard), and his friend, James Taylor (Taylor), were standing in the alley and Johnson's van was parked near the garage.

As Diane spoke with Leonard and Taylor, two men came running into the alley. One of the men, dressed in a navy pea coat and baseball cap, identified himself as a police officer and demanded that they lie down on the ground. The men searched them, found a gun belonging to Leonard, and took it. Diane, Leonard, and Taylor were then forced into Leonard's van. Diane's hands and eyes were bound with duct tape.

The three abductees were driven in Leonard's van to a garage. Leonard was taken inside. Later, Taylor was removed from the van, driven to another area, and let go.

Inside the van Diane was asked if she knew where Leonard kept his money. She said that she did not. Later, Leonard was brought back into the van. She and Leonard were driven away.

Diane heard someone outside the van instruct their abductors to wipe off the tape. The duct tape was removed from Diane's hands and the tape on her eyes was wiped off. Shortly thereafter the van stopped. Diane heard a "knocking sound" and the abductors left the van. Diane called to Leonard but received no reply.

Diane got into the driver's seat and frantically drove to a nearby gas station. At the gas station, Diane asked the attendant for assistance and the police were called. It was discovered that Leonard had been murdered. His autopsy revealed that he had been shot six times in the head, at close range.

Leonard was a drug dealer. It appears from the evidence that the abduction stemmed from a dispute over money. At about 9:50 p.m. on November 8, 1989, Leonard's girl friend, Kimberly Haynes, received a phone call from Leonard. He told her he was in trouble with the police, but when she said she would go to the police station, Leonard shouted "No." Another man's voice was then heard over the phone. This man told Kimberly to "come up with" $15,000 to $16,000 or Leonard would be killed.

Kimberly attempted to get the money from Leonard's grandmother, but was unsuccessful. Kimberly received two other phone calls from the man, but she was unable to obtain the money he requested.

Consuella Shaw, a past girl friend of Stanley Hughes, and Shaw's friend, Lisa Everett, lived at 13320 S. Prairie in Chicago. Although Shaw and Everett testified before the grand jury that indicted Hughes, they were reluctant witnesses at trial. It was established, nonetheless, that on the evening of November 8, 1989, Stanley Hughes, wearing a navy pea coat and cap, came to Shaw's home with another man. The man with Hughes used the telephone. After the call, Hughes and the other man went to the garage behind Shaw's

home. Hughes came back inside the home later and used the telephone again, twice.

Later in the trial, Shaw's and Everett's grand jury testimony was ruled admissible as substantive evidence and read into the record.

Joy Van Giesen, an assistant record keeper at Illinois Bell, by checking customer service records, established that three telephone calls received by Kimberly Haynes on November 8, 1989, between 9:50 p.m. and 11:03 p.m. were placed from a telephone registered to Consuella Shaw at 13320 S. Prairie.

On November 17, 1989, Diane Johnson identified Hughes from a photo array put together by the police. She also picked Hughes out in a lineup conducted on November 18, 1989. After the lineup, Diane was taken to 13320 S. Prairie. There she identified the garage as the place where she and Leonard had been taken on the night of November 8, 1989.

Taylor did not identify Hughes from the photo array or in the lineup. In March 1990, however, he contacted the police, identified Hughes as his abductor, and admitted that, due to his fear of reprisal, he had been lying earlier when he failed to identify Hughes in the photo array and lineup.

## ISSUES

In addition to his claim that his right to a speedy trial was violated, the defendant contends: he was improperly denied the right to confront Diane Johnson with a pending probation violation; the trial court improperly denied him the right to show he had been framed by the police or that the police overlooked evidence that someone else committed the crime; and the sentence imposed on him was excessive.

## DECISION

### THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL

■ Section 103—5 of the Code of Criminal Procedure of 1963 provides for the right of a defendant to a speedy trial (725 ILCS 5/103—5 (West 1992)). When the accused is taken into custody, as this defendant was, the State has 120 days to bring the case to trial, unless the defendant does something to cause a delay.

In this case, the defendant was taken into custody on November 18, 1989. His trial began September 2, 1992. The defendant caused or agreed to many of the delays that took place. The cause of one delay, from December 8, 1989, to December 26, 1989, is disputed. The record shows the continuance was "by agreement." That delay was right-

fully charged to the defendant. See *People v. Brimmer* (1978), 60 Ill. App. 3d 214, 219, 376 N.E.2d 337.

As the trial date of July 6, 1992, approached, the State had 13 days to bring the case to trial. Since at least June 29, the State had been looking for two of its witnesses, Consuella Shaw and Lisa Everett. On July 6 the State made an oral motion for an extension of time.

Section 103—5(c) authorizes the trial court to continue the case for not more than 60 days when it determines the State has exercised due diligence to obtain evidence material to the case and that there are reasonable grounds to believe the evidence may be obtained at a later day.

The State's motion can be oral. (*People v. Howard* (1985), 130 Ill. App. 3d 967, 474 N.E.2d 1345.) The State is not required to follow any "rigid format" or "particular language" such as "extension of time" or "due diligence" to obtain the extension. (*People v. Folenga* (1980), 83 Ill. App. 3d 210, 214, 404 N.E.2d 935.) The determination of whether to grant an extension is a matter for the trial court's discretion, which will not be disturbed on appeal absent a showing of abuse of that discretion. (*People v. Almo* (1984), 123 Ill. App. 3d 406, 411, 462 N.E.2d 835.) When an extension is challenged, "a reviewing court should, in order to reach a just result, examine the entire record as it existed at the time the motion for a continuance is considered." *People v. Antrim* (1978), 67 Ill. App. 3d 1, 3, 385 N.E.2d 5.

On July 6 the prosecutor said to the trial court:

"Judge, as you know, the case was up before Your Honor for trial on the 29th of June, 1992, and at that time, judge, it was set for trial. The State was ready for trial except that two of the State's witnesses, which are material to this case, did not come to court. We then presented to Your Honor on that date two motions, two rules to show cause, for their absence, and asked that the Court issue bench warrants for the arrest of one Consuella Shaw and one Lisa Everett. After that, judge, those warrants were lodged with the Clerk of the Circuit Court and were also lodged with the Fugitive Section of the Cook County Sheriff's Police, and they were also given to N.C.I.C., the National Criminal Institute Computer. In addition Judge, our investigators have, at length, searched for these individuals by contacting relatives and known friends, going to last known addresses, and by checking— doing credit checks on these individuals."

Over objection, the trial court granted the State a 30-day extension.

The State had not found its witnesses when the case came up again, on July 27, 1992. This time the State filed a written petition

for an extension of time. The petition substantially repeated the assertions of the July 6 oral motion, with less detail. Again the defendant objected. Again the trial judge granted the State's motion. The defendant's motion to dismiss the indictment was denied.

We conclude that the trial court did not abuse its discretion when it granted the two extensions and denied the defendant's motion to dismiss.

Although the State's diligence was challenged, the defense did not dispute the truth of the State's assertions. It was within the trial court's discretion to accept those assertions. See *People v. Gamble* (1976), 41 Ill. App. 3d 394, 353 N.E.2d 136.

This case is different than *People v. Flowers* (1980), 84 Ill. App. 3d 563, 406 N.E.2d 16, relied on by the defendant. In *Flowers*, the State said it could not locate its police investigator because he was out of the country on furlough. It turned out that the officer had in fact returned from his previously scheduled furlough before the trial date. The court held it was an abuse of discretion to grant the extension.

There is nothing in this record to indicate the State was careless, indifferent, or mendacious in its attempts to gain additional time. Perhaps the State should have kept a closer watch on its witnesses, as the defendant contends, but the evidence does not support a conclusion that due diligence was lacking. Lisa Everett had been served with a subpoena before June 29. Consuella Shaw knew a subpoena had been issued for her appearance on June 29. Their failure to honor the subpoenas was the basis for the trial court's issuance of warrants for their arrest. The trial court had enough information to make an informed judgment. We will not second-guess that judgment.

Likewise, the evidence that the two missing witnesses were material to the State's case was ample. Both had testified before the grand jury. The defense had those transcripts. In addition, both Consuella Shaw and Lisa Everett appeared on the defense list of witnesses, as well as the State's list. That alone is enough to establish materiality for the purpose of section 103—5(c). *People v. Almo* (1984), 123 Ill. App. 3d 406, 411, 462 N.E.2d 835; *People v. Antrim* (1978), 67 Ill. App. 3d 1, 3-4, 385 N.E.2d 5.

The final requirement for a section 103—5(c) extension is the existence of reasonable grounds to believe that the witnesses could be found at a later day. We find there was sufficient unchallenged evidence for the trial court to conclude the witnesses might turn up by the time the extensions ran out.

In sum, we find the defendant has not sustained his burden of af-

firmatively establishing the violation of his right to a speedy trial. See *People v. Jones* (1965), 33 Ill. 2d 357, 361, 211 N.E.2d 261.

## THE CROSS-EXAMINATION OF DIANE JOHNSON

■ Diane Johnson was an important State witness. She was the person who identified the defendant as her kidnapper and Leonard Johnson's killer. She had been arrested for possession of a controlled substance on June 3, 1989. That charge was pending until April 30, 1991, when she was placed on first-offender probation, a sentence that does not include a judgment of conviction. See 720 ILCS 570/410 (West 1992).

Sometime before this trial, she violated her probation, which then was extended. She was on that extended probation when she testified on September 8, 1992.

The defendant wanted to use that probation to attack Diane Johnson's credibility. The trial court sustained the State's objection to that line of cross-examination. The defendant says the ruling deprived him of a fundamental constitutional right.

The State first responds that the defendant has waived the issue because he did not include it in his post-trial motion. Ordinarily, to preserve an error for review both a trial objection and a written post-trial motion raising the issue are required. *People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124.

We do not believe this is a close case. The evidence against the defendant was persuasive. The error complained of is not so fundamental and of such magnitude that the accused was denied a right to a fair trial. For those reasons, we decline to consider the question under the plain error doctrine. See *People v. Byron* (1995), 164 Ill. 2d 279, 293, 647 N.E.2d 946.

Even if we had considered the issue, there was no reversible error.

The first-offender probation could not be used as a conviction to attack credibility. Section 410 of the Illinois Controlled Substances Act envisions a probation where no judgment is entered and, on discharge, no conviction remains. See 720 ILCS 570/410(a), (g). Also see *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 429, 458 N.E.2d 504.

Defendant now contends the probation could have been used for its impact on Diane Johnson's bias or motive to testify falsely. He cites *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. That was not his avowed purpose at trial. There, he said he wanted to use the probation to demonstrate that Diane Johnson was a drug user.

We do not see how the pending probation could have had any

substantial impact on Diane Johnson's testimony. She was a victim, not an accomplice. She had given a clear and detailed account of her kidnapping and twice identified the defendant before she received the probation. There was no hint of a motive to falsely accuse the defendant. There was no indication her account of events had changed during the years this case was pending.

In *Davis v. Alaska*, it was the witness' probationary status at the time he first identified the defendant which went to motive and bias that could have affected the in-court identification. That is not the case here. The defendant in this case makes no claim that Diane Johnson hoped for or expected leniency from the State at the time she first accused the defendant. See *People v. Sharrod* (1995), 271 Ill. App. 3d 684.

### THE CLAIM OF POLICE FRAME OR INDIFFERENCE

■ The defendant contends his constitutional rights were violated when the trial court barred him from proving the police framed him or had overlooked evidence that someone else committed the crime.

Again, the defendant failed to include this purported error in his post-trial motion. He has waived the issue. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

In addition, there is nothing in the record to support the defendant's contention. The argumentative accusations of "frame-up" and "scapegoat" in defense counsel's opening statement were objected to and the trial court properly sustained those objections. The only offer of proof made by the defense was, at best, triple hearsay and did not stand a chance of being admitted as evidence.

In support of his desire to call two police officers, defense counsel told the judge:

> "Now, they will testify that, number one, that immediately the same day they were interviewing the mother and asked what was known, she said she had spoken to Frog and Frog told her—Frog is Taylor, if you please, James Taylor, one of the witnesses. And he told her that he had been at a meeting somewhere in the neighborhood there where the two brothers lived, and they had another half dozen persons or more, and they were proposing to off Leonard Johnson, that they had intended on killing him."

While it is true that a defendant may attempt to prove someone else committed the crime (*People v. Ward* (1984), 101 Ill. 2d 443, 455, 463 N.E.2d 696), the rules of evidence are not suspended. (*People v. Thomas* (1986), 145 Ill. App. 3d 1, 13, 495 N.E.2d 639.) If the proposed testimony was offered for its truth, it was inadmissible hearsay. If it was offered to show the police did not follow leads, it was remote and

speculative. Either way, the trial court correctly barred the "someone else" testimony.

## THE NATURE AND LENGTH OF THE SENTENCE

■ The defendant received a sentence of natural life, followed by three concurrent 60-year terms. He contends the sentence was excessive and "serves no penological purpose other than to increase the financial burden on the State." He points to other murder cases where the sentences were less severe. And he says current theories of deterrence and incapacitation do not justify this harsh sentencing of the 43-year-old defendant.

The trial court carefully reviewed the defendant's criminal history (six prior felony convictions) and the circumstances of the offense. It correctly found that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. That is a fair characterization of a crime where the defendant kidnaps his victim, handcuffs the victim's hands behind his back, hits him, threatens to kill him, then fires six shots into his brain.

The natural life sentence for murder was authorized by statute (see 730 ILCS 5/5—8—1(1)(b) (West 1992)) and supported by case law (*People v. Hartzol* (1991), 222 Ill. App. 3d 631, 584 N.E.2d 291).

Because of the defendant's prior armed robbery conviction, he was eligible for and received an extended term of 60 years for the three kidnapping convictions. (730 ILCS 5/5—8—2 (West 1992).) Running the kidnapping sentences consecutive to the natural life sentence reflects the trial court's view of the defendant's background and actions in this case. Other courts have taken the same view in similar cases. See *People v. Ramey* (1992), 240 Ill. App. 3d 456, 608 N.E.2d 512; *Hartzol*, 222 Ill. App. 3d at 649-55.

This is not the time or place to discuss the philosophical underpinnings of our sentencing law. Our task is to determine whether the sentences were authorized by law and whether the trial court abused its discretion in imposing those sentences. See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

In light of the facts of this case, the defendant's criminal history, and the explicit findings made by the trial court, we decline to reduce or modify the sentences.

## CONCLUSION

The defendant's convictions and sentences are affirmed.

Judgment affirmed.

BUCKLEY and BRADEN, JJ., concur.