THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BERNARD FOSTER, Defendant-Appellant.

First District (6th Division)   No. 1—96—2054

Opinion filed June 19, 1998.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda D. Woloshin, and LaTisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Bernard Foster challenges his conviction for first degree murder, arguing that (1) he was denied his right to a speedy trial; (2) the trial court erred in admitting evidence of other crimes; (3) he was denied effective assistance of counsel; (4) the prosecutor improperly argued gang affiliation; (5) the jury was improperly instructed; (6) cumulative errors deprived him of a fair trial; and (7) the sentence imposed was excessive.

For the reasons that follow, we affirm.

On July 8, 1994, Mark Peters went to an apartment building that he owned with his mother on South Calumet to secure it for the evening. Later that evening, Officer Robert Bell responded to a call at the building and found Peters lying in a pool of blood with several gunshot wounds. Bell found bullets and spent shell casings. A 13½-inch steel knife was found near Peters' body. An ambulance was called, but Peters died as a result of the gunshot wounds. Bell described the area, stating that the buildings usually housed gang members, gang activity, prostitution and drug activity.

Detective James Jones also went to the building on July 8, 1994. He spoke to several individuals, and after those conversations the of-

ficers were looking for a male named Lazarus, also known as "Zeke Cool," and another male with the nickname "Yogi." On July 12, 1994, Lazarus Smith's sister was arrested. She told police Lazarus' full name and address. Lazarus was arrested and charged with the murder of Mark Peters. Police continued to look for defendant, who goes by the name "Yogi."

On July 20, 1994, Detective Paul Mack arrested defendant while responding to a call for an in-progress aggravated battery. Detective George Holmes spoke with defendant. Defendant gave an oral statement, admitting he was present at the building on the day Peters was killed, but stating that he ran from the building when he heard gunshots and did not know who did the shooting. Holmes contacted Assistant State's Attorney Laura Forrester.

Holmes and Forrester spoke with defendant and he gave the same statement he had already provided. Forrester then confronted defendant with contradictory evidence. Forrester stated that "[defendant] paused, he looked down and he started to cry. *** He then said I didn't mean to shoot him, I'm sorry." He said, "he wanted to tell the whole truth at that time."

Defendant gave an oral statement, which was reduced to writing and signed. Forrester read the statement into the record. It states in relevant part:

"Bernard states that on July 8, 1994, at around 10:30 PM, he went to 4208 South Calumet, to by [sic] some marijuana. Bernard states he was on the porch with Anthony McKee also known as Pooh, Jomo Burks and Lazarus Smith also known as Zeke.

Bernard states that a man came out on the porch and asked them to leave. Bernard states he has now come to know the man's name to be Mark Peters. Bernard states that he, Pooh, Jomo and Zeke are all members of the Gangster Disciple street gang. Bernard, Jomo, Zeke and Pooh went into the hallway and were talking with Mr. Peters about Zeke's beeper. While everyone was in the hallway, there was a struggle with Mr. Peters. Bernard had a gun that Zeke had given him that night. Zeke showed Bernard how to take the safety off the gun and Bernard placed the gun in his waistband.

Mr. Peters had lifted his shirt to show the beeper he had was not Zeke's. After Mr. Peters struggled in the hallway with Jomo, Zeke, Pooh and Bernard, Mr. Peters ran towards the basement. Bernard tried to get out of the hallway and tried to open the door. ***

Mr. Peters returned to the hallway carrying something that Bernard could not see. Bernard heard somebody yell something. Mr. Peters was on the stairs and Bernard held out the gun. Bernard shot at Mr. Peters, then Mr. Peters turned away from Bernard. Bernard states he kept firing at Mr. Peters and hit him in the back.

Bernard states he saw Mr. Peters lying on the stairs face down. Bernard states he fired the gun until it started clicking.

Zeke, Pooh and Jomo were all in the hallway at this time. Everyone ran out of the building."

Holmes also testified as to what defendant stated during the confession. His testimony was similar to the statement read by Forrester. However, he also stated that defendant said "he had taken the weapon from Zeke because there was other people in the area that were not Gangster Disciples." He also stated that when Peters came out, he asked if any of them lived there and told them they had to leave. Defendant, Pooh, Zeke and Jomo then went into the hallway. Zeke started talking to Peters about his beeper. Peters lifted his shirt "as if to show Zeke that he didn't have his beeper." Jomo started punching Peters and Pooh and Zeke joined in. Holmes also stated that when discussing the shooting, defendant said that he "continued to fire that gun until it started clicking, till it ran out of bullets."

Defendant was charged with the murder of Mark Peters. The matter was continued several times. On February 5, 1996, the State moved to extend the time beyond the term for a speedy trial and defendant objected. The court granted a 30-day continuance.

A jury trial began on March 5, 1996. Defense counsel moved *in limine* to prohibit any reference to gangs. The court denied the motion, but stated it would consider any objection at trial. In addition to the testimony already mentioned, several other witnesses testified at trial.

Dr. Barry Lifschultz, the doctor who performed the autopsy on Mark Peters, testified that he found five gunshot wounds and one small abrasion on the back left shoulder of Peters' body. He did not know the order in which the wounds were inflicted, but he stated that the injury to the leg would be consistent with Peters facing the shooter or attempting to turn from the shooter, the three injuries to the back would be consistent with Peters having his back to the shooter at the time he received the injuries, and the injury to the buttocks would be consistent with Peters having his back to the shooter, falling backwards toward the shooter, and being shot as he was falling to the ground.

Gregory Toler, a friend of defendant, testified that he was in the area of the apartment on the day of the shooting. He drove there with Lazarus Smith. After he visited an individual in the building, he was outside sitting in the car when he heard some gunshots and saw Lazarus, Pooh, and Jomo running. Although he did not say at trial that he saw defendant, the State pointed out that he had told officers that he also saw Yogi run from the building. Toler also stated that he, defendant, and the others were members of the Gangster Disciples.

Defendant did not testify at trial. The jury found him guilty of first degree murder. Defendant filed a posttrial motion, which was denied. The trial court imposed an extended-term sentence of 95 years' imprisonment.

■ On appeal, defendant first argues that his right to a speedy trial was violated because the trial court improperly granted the State an extension to the 120-day statutory term for a speedy trial. The Speedy Trial Act requires that every person in custody "shall be tried *** within 120 days from the date he was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103—5(a) (West 1994). The trial court may grant an extension to that term if it "determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day." 725 ILCS 5/103—5(c) (West 1994). If a defendant is not tried in accordance with these subsections he must be discharged from custody. 725 ILCS 5/103—5(d) (West 1994).

■ The State contends defendant has waived review of this issue because he failed to file a motion for discharge prior to trial (see *People v. Howard*, 130 Ill. App. 3d 967, 972-73 (1985) ("The right to discharge under the speedy-trial act is waived unless a motion is made prior to conviction")) and because he failed to file a written posttrial motion on this issue (see *People v. Dunskus*, 282 Ill. App. 3d 912, 917 (1996) (failure to raise speedy trial issue in motion for new trial constituted waiver)). Because defendant did not file a motion for discharge prior to trial and did not raise this issue in his posttrial motion, the issue is waived.

■ Defendant contends that if the matter is waived, then he was denied effective assistance of counsel. A two-pronged test governs ineffective assistance of counsel claims: (1) counsel's performance must fall well below an objective standard of reasonableness, and (2) there must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Walker*, 255 Ill. App. 3d 10, 14-15 (1993), citing *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984). Failure of counsel to seek discharge of a client on speedy trial grounds generally will be deemed ineffective assistance of counsel if there is a reasonable probability that the defendant would have been discharged had a timely motion been made. *People v. Staten*, 159 Ill. 2d 419, 431 (1994).

The decision of whether to grant an extension of the 120-day period rests within the discretion of the trial court, and its determination will not be disturbed absent an abuse of that discretion. *People v. Hughes*, 274 Ill. App. 3d 107, 111 (1995). When an extension is chal-

lenged, a reviewing court should examine the entire record as it existed at the time of the motion. *Hughes*, 274 Ill. App. 3d at 111.

The State's written motion for an extension stated that it had "exercised due diligence to obtain evidence material to the case" and that "there are reasonable grounds to believe that said evidence may be obtained at a later date." At the hearing, the prosecutor stated that the State had "used due diligence in obtaining evidence material to the case." She further stated "we allege we have been trying to find eye witnesses on this case. Also pursuant to the statutory requirement, we believe in good faith, we'll be able to find these witnesses." Defense counsel did not assert that the prosecution failed to establish due diligence, nor did he challenge the State's assertions. He merely stated: "For the record, Judge. Mr. Bernard Foster stands ready, answering ready, demands trial, Judge. Would object to People's motion for continuance."

In *Hughes*, 274 Ill. App. 3d at 111, the prosecutor asked for an extension, stating that two material witnesses did not come to court, it had asked for rulings to show cause, and bench warrants had been issued for the witnesses. While the defendant objected and challenged the State's diligence, he did not dispute the truth of the State's assertions. There was nothing to indicate that the State was "careless, indifferent, or mendacious in its attempts to gain additional time." *Hughes*, 274 Ill. App. 3d at 112. This court stated, "[t]he trial court had enough information to make an informed judgment. We will not second-guess that judgment." *Hughes*, 274 Ill. App. 3d at 112; see also *People v. Folenga*, 83 Ill. App. 3d 210, 214 (1980) (statute does not require affidavit or evidence in support of State's motion for extension to speedy trial period; allegations of fact in support of such motion will *prima facie* satisfy State's burden in absence of denial by defendant).

■ Upon review of the record, we do not find an abuse of discretion by the trial court. Defendant has not pointed to anything that would indicate indifference or carelessness by the State in its actions and we will not "second-guess" the lower court's judgment here. Because defendant has not shown that he would have been entitled to discharge had his counsel so moved, he has failed to demonstrate ineffective assistance of counsel on this issue.

■ Defendant next argues that he was unduly prejudiced by the introduction of evidence regarding his arrest. Over objection, Detective Mack testified that he arrested defendant in response to a call for an aggravated battery. The State concedes it was improper to admit this evidence. See *People v. Lewis*, 165 Ill. 2d 305, 346 (1995) ("evidence of other crimes is not admissible merely to show how the investigation unfolded *unless* such evidence is also relevant to specifi-

cally connect the defendant with the crimes for which he is being tried") (emphasis in original).

The State argues, however, that the admission of this evidence was harmless. In *Lewis*, 165 Ill. 2d at 345-46, the State presented evidence that the defendant was in custody in California and provided details of the extradition procedure to show how its investigation led to the defendant. The court stated that even though the evidence was incidental and nonspecific in nature, the jury could have inferred that the defendant had been engaged in prior criminal activity. The court concluded, however, that the evidence as presented had no tendency to "overpersuade the jury" on the issue of defendant's guilt and therefore it ruled that defendant was not unduly prejudiced. *Lewis*, 165 Ill. 2d at 347.

In the instant case, defendant was not unduly prejudiced by the introduction of this evidence. It was of a very limited nature, the jury was not provided with any facts or additional information about the situation, and the trial court instructed that it was not to be considered for the truth of the matter asserted. The evidence of guilt was very strong in this case. Defendant confessed to the shooting and the facts indicated that he shot the victim repeatedly in the back. Defendant is not entitled to a new trial on this issue.

■ Defendant asserts he was denied his right to effective assistance of counsel when his counsel promised, but failed to produce, a weapons expert. As discussed, defendant must show that counsel's performance fell well below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Walker*, 255 Ill. App. 3d at 14-15.

In opening argument, defense counsel stated that defendant used a semi-automatic pistol and that the jury would hear evidence from experts in weapons as to how such weapons operate. During trial, counsel asked an evidence technician offered by the State as to how an automatic weapon operated. The witness was unable to answer. During closing argument, counsel attempted to argue that when defendant shot the gun, "the trigger kept going. By the nature of the instrument." The prosecutor objected and the court stated "[t]here is no evidence that the trigger was—the bullets would continue to go as the trigger was pulled, no evidence at all of anything along that."

The promise to produce significant exonerating evidence and the failure to fulfill such promise can be highly prejudicial. *People v. Lewis*, 240 Ill. App. 3d 463, 466 (1992). In this case, however, we do not believe that but for these comments by defense counsel the outcome of the case would have differed. While counsel's performance may have

fallen below the objective standard, there is not a reasonable probability that the actions influenced the jury's verdict in light of the entire record.

Defendant also argues that the trial court improperly admitted evidence as to his gang affiliation. The court denied defendant's motion *in limine*, but stated that defendant could raise any objection at trial. Defendant did not object to specific instances during the trial. However, he did complain of the State's argument regarding the gang association when he moved for a new trial and in his posttrial motion.

■ A defendant may not claim error from the admission of certain evidence unless he objects to its admission both before the trial court and in a written posttrial motion. *People v. Mason*, 274 Ill. App. 3d 715, 721 (1995), citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, an objection to certain testimony in an *in limine* motion filed prior to trial and in a written posttrial motion has been held to be sufficient to preserve an issue for appeal. See *Mason*, 274 Ill. App. 3d at 721. In any event, we do not find this issue a basis for reversal.

■ The record indicates that the following evidence was introduced relating to gangs: defendant told Holmes that he and his friends were members of the Gangster Disciples street gang; he stated that he took the gun Zeke offered him because there were other people in the area that were not Gangster Disciples; Gregory Toler testified that he, defendant and the others involved were Gangster Disciples; and Bell stated that several buildings in the area were partially occupied and usually housed gang members, gang activity, prostitution and drug activity.

Evidence that defendant was a member of a gang or participated in gang-related activity may be admissible at trial, despite its prejudicial effect, to establish a common purpose or design or to provide a motive for an otherwise inexplicable act. *People v. Garrett*, 276 Ill. App. 3d 702, 710 (1995), citing *People v. Patterson*, 154 Ill. 2d 414 (1992). A trial court's decision to admit gang evidence will not be overturned unless a clear abuse of discretion is shown. *People v. Colon*, 162 Ill. 2d 23, 30 (1994).

We cannot say the trial court abused its discretion in admitting the gang-related evidence in this case. The evidence mentioned above was relevant. It explains defendant's relationship and loyalty to the other men, and it suggests why Peters may have wanted them to leave the property and why the men may have resented Peters' attempts.

■ Defendant also argues that the trial court erred in allowing prejudicial argument as to the gang evidence. The State contends he has waived this issue because defendant did not object during argument. The law provides that prosecutors are given wide latitude in

argument. They may argue facts and legitimate inferences drawn from the evidence. *People v. Smith*, 141 Ill. 2d 40, 60 (1990). Because the evidence was properly admitted, the State was justified in making proper comment on it.

Even if any of the statements about which defendant complains were improper, this issue alone could not be said to have changed the outcome of the case in light of the strong evidence of guilt. See *People v. Byron*, 164 Ill. 2d 279, 295 (1995) (prosecutor's remarks may sometimes exceed bounds of proper comment, but verdict must not be disturbed unless it can be said that remarks resulted in substantial prejudice to accused, such that absent those remarks verdict would have been different).

■ Defendant next contends the jury was improperly instructed as to Peters' ability to defend his property. Defendant failed to object to this instruction, but argues that Supreme Court Rule 451(c) (177 Ill. 2d 451(c)) provides that substantial defects in jury instructions are not waived by the "failure to make timely objections thereto if the interests of justice require." Even if we review the issue, defendant has failed to demonstrate that he is entitled to reversal.

State instruction 16 stated:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to terminate another's trespass on real property other than a dwelling lawfully in his possession or in the possession of another who is a member of his immediate family or in the possession of a person whose property he has a legal duty to protect."

This instruction was apparently based on Illinois Pattern Jury Instructions, Criminal, No. 24—25.08 (3d ed. 1992), which also included the following language:

> "[However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent the commission of ____.]"

By leaving out this last section, defendant contends the jury was instructed that Peters was completely justified in using any amount of force and consequently could not find defendant's conduct justified.

The instruction in this case did not deprive defendant of his claim of self-defense. The jury was clearly instructed as to that defense. While the defense of property instruction may not have fully explained Peters' rights, in the end, we do not believe it influenced the outcome of the case. In light of the context of this instruction within the entire case, we hold that this was not a "substantial defect" that the interests of justice require this court to reverse.

■■ Defendant argues that the cumulative effect of the errors in his trial deprived him of his right to a fair trial. None of the errors alleged require reversal in this case. Even looking at the matters cumulatively, the record indicates that defendant received a fair trial and defendant's arguments do not warrant remand. We note again that the evidence of guilt in this case was overwhelming. Not only did the jury have a statement of the accused admitting to the shooting, the evidence indicated that defendant shot Peters repeatedly in the back.

■ Defendant contends that the 95-year sentence imposed was excessive. He admits that he failed to file a postsentencing motion challenging his sentence. Therefore any objection should be considered waived. See *People v. Reed*, 177 Ill. 2d 389 (1997) (defendants who did not file postsentencing motions challenging sentences waived review of the issue). Nevertheless, he urges this court to review the sentence under plain error analysis, arguing that the trial court failed to adequately consider his rehabilitative potential and considered improper victim impact statements. See *People v. Hill*, 294 Ill. App. 3d 962 (1998) (reviewing sentence under plain error analysis despite waiver). Because the evidence is not closely balanced in this case and because we do not find prejudicial error, plain error review is not appropriate. See *People v. Mullen*, 141 Ill. 2d 394, 401-02 (1990) (plain error review invoked where evidence is closely balanced or where error adversely affected defendant's right to a fair trial).

We observe, however, that even if not waived defendant has not presented a basis for altering his sentence. A trial court's sentencing decision is entitled to great deference and weight. *People v. La Pointe*, 88 Ill. 2d 482, 492-93 (1982). The trial court is not required to detail for the record its entire process for determining an appropriate penalty. *La Pointe*, 88 Ill. 2d at 493. Defendant argues that his age of 21 years at the time of the offense and his criminal record of three prior convictions for stolen motor vehicles should have mitigated his sentence. The record, however, established a very serious crime in which defendant shot Peters in the back and there were several facts relating to his employment and educational history that suggested that defendant had very little rehabilitative potential. The trial court did not abuse its discretion.

■■ ■ Defendant argues that the court erred in admitting more than one victim impact statement because the Rights of Crime Victims and Witnesses Act (Act), which provides for victim impact statements, defines "crime victim" as a "single representative." 725 ILCS 120/3(a)(3) (West 1994). Because defense counsel did not object to these statements, any objection has been waived. Moreover, case law sup-

ports the admission of more than one victim impact statement. See *People v. Gonzales*, 285 Ill. App. 3d 102, 104 (1996) ("overall statutory scheme" of Act allowed the court to consider victim impact evidence from more than one source). Furthermore, section 9 of the Act states "[n]othing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case." 725 ILCS 120/9 (West 1994). See *People v. Benford*, 295 Ill. App. 3d 695, 692 N.E.2d 1285 (1998).

For the aforementioned reasons, we affirm the conviction and sentence.

Affirmed.

CAMPBELL, P.J., and QUINN, J., concur.